## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (hereinafter, "Agreement") is entered into by and between **Michael L. Burns** ("Employee") and **Southern Glazer's Wine and Spirits of Arkansas, LLC** (the "Company") (Employee and the Company may be collectively referred to as the "Parties" or individually as a "Party") and shall be made effective upon execution of this Agreement by Employee (the "Effective Date").

### RECITALS

WHEREAS, Employee was formerly employed by the Company from June 6, 2018 through January 28, 2019; and

WHEREAS, Employee has alleged against the Company and certain Released Parties (defined below) violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201 *et seq.*, in a lawsuit filed in the United States District Court for the Eastern District of Arkansas, styled *Michael Burns, Individually and on Behalf of All Others Similarly Situated v. Southern Glazer's, Inc., et al.*, Case No. 4:19-cv-140 (the "Lawsuit"); and

WHEREAS, the Company denies the allegations made by Employee, but wishes to settle such matters to avoid the expense and uncertainty in engaging in further proceedings related to the claims in the Lawsuit; and

WHEREAS, the Parties desire to compromise, settle, and forever resolve and dispose of all outstanding issues, claims, potential claims, differences, disputes, and other matters between them; and

NOW, THEREFORE, in consideration of the foregoing, and the promises and other consideration herein, the sufficiency and adequacy of which are stipulated and conceded, the Parties agree as follows:

### AGREEMENTS

1. **Separation from Employment and Final Payments.** It is understood and agreed that Employee's employment with the Company terminated effective January 28, 2019 (the "Separation Date"). Employee acknowledges that Employee received the following:

    A. Employee's regular wages, including overtime, if any, through and including the Separation Date;

    B. Employee's normal fringe benefits, such as medical, dental and vision coverage, in accordance with the terms of any applicable plan, at which time Employee may be eligible for continued health insurance coverage at Employee's option, in conformity with the Consolidated Omnibus Budget

1 of 8

Employee _MB_    the Company 

Reconciliation Act ("COBRA"), and in conformity with the American Recovery and Reinvestment Act of 2009;

C. All accrued but unused vacation; and

D. Benefits, if any, under any pension, retirement or profit-sharing plan provided by the Company, which will be determined pursuant to the terms of such plans.

Employee acknowledges that, as of the Separation Date, Employee has been paid all amounts due to Employee through the Separation Date, and that **except for the Settlement Payment specifically set forth in paragraph 3 of this Agreement, neither the Company nor any of the Released Parties (defined below) owe any additional amounts to Employee for any reason.**

2. **Release.** In return for the promises contained in this Agreement, Employee, on behalf of Employee and Employee's spouse, heirs, executors, trustees, representatives, and assigns, if any, hereby fully releases the Company, together with its respective present and former affiliates, parent organizations and subsidiaries (including, without limitation, Southern Glazer's Wine and Spirits, LLC, Southern Wine & Spirits of America, Inc., Glazer's, Inc., SWS Holdings, Inc., Glazer's Venture Holdings, Inc., Southern Wine and Spirits Corporation, or any company owned by any of the foregoing companies), and their respective present and former officers, directors, employees, members, shareholders, agents, trustees, administrators, attorneys and insurers (each of whom shall be referred to individually as a "Released Party" and collectively as the "Released Parties"), jointly and/or severally, in their individual and official capacities, from any and all claims of whatever kind or character, whether known or unknown, suspected or unsuspected, asserted or unasserted, as a result of any and all alleged acts or omissions arising in whole or in part prior to the Effective Date of this Agreement, including, without limitation, the following:

- any action arising under any federal, state, or local statute, such as Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*; **The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621** *et seq.*; The Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; The Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a; Americans With Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.*; Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq.*; Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1000 *et seq.*; Family and Medical Leave Act, as amended, 29 U.S.C. § 2601, *et seq.*; the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.*; the Arkansas Equal Pay Law, Ark. Code Ann. § 11-4-601, *et seq.*; the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201 *et seq.*, or any other local, state or federal anti-discrimination, anti-retaliation, or civil rights statute, as amended;

- any action under common law or in equity, including, but not limited to, claims based on alleged breach of an obligation or duty arising in contract or tort, such as breach of contract, fraud, quantum meruit, wrongful discharge, defamation,

 

infliction of emotional distress, assault, battery, malicious prosecution, false imprisonment, harassment, negligence, gross negligence, and strict liability;

- any claim for lost, unpaid, or unequal wages, salary, bonuses, stock options, commissions, sale proceeds, equity payments, paid-time-off benefits, severance payments, or any other benefits; or

- any other claim, regardless of the forum in which it might be brought, which Employee has, might have or might claim to have against any of the Released Parties, for any and all injuries, damages, wages, benefits, reimbursements, penalties, costs, attorneys' fees, and/or liability, if any, whatsoever and whenever incurred, suffered, or claimed by Employee.

**It is expressly agreed and understood by Employee that this release includes, but is not limited to, any and all claims arising from or in any way connected with the employment relationship between Employee and the Company or any of the Released Parties.**

3. **Consideration.** In consideration of the promises contained herein, including, without limitation, the release in paragraph 2 and the confidentiality clause in paragraph 6, within fourteen (14) business days after court approval of this Agreement and dismissal of the Lawsuit with prejudice, the Company agrees to pay Employee the total consideration of Four Thousand Five-Hundred Dollars ($4,500.00) (the "Settlement Payment"). Without limiting the scope of the releases contained herein, the Settlement Payment shall be allocated as follows:

   A.  A check made payable to Michael Burns in the amount of One Thousand One Hundred Twenty-Five Dollars ($1,125.00), less applicable payroll taxes and withholding requirements imposed by law, as compensation for alleged lost wages and that shall be reported on a Form W-2;

   B.  A check made payable to Michael Burns in the amount of One Thousand One Hundred Twenty-Five Dollars ($1,125.00), as compensation for alleged compensatory damages and that shall be reported on a Form 1099; and

   C.  A check made payable to Sanford Law Firm, PLLC, after a Form W-9 provided to the Company by such law firm, in the amount of Two Thousand Two Hundred and Fifty Dollars ($2,250.00) for all attorney's fees and costs connected with the Lawsuit, with such amount reported on a Form 1099.

The Settlement Payment shall be made by three checks provided to the Sanford Law Firm, PLLC, within fourteen (14) business days after court approval of the Agreement and dismissal of the Lawsuit with prejudice.

Employee _____          the Company _____

DocuSign Envelope ID: BCF11401-AA72-493D-807F-BCEDD49A5918

Case 4:19-cv-00140-JM   Document 15   Filed 06/03/19   Page 4 of 8

Employee acknowledges that the Released Parties do not owe Employee any additional payments or compensation, except as set forth in this Agreement, and Employee acknowledges that the Company's payment of the Settlement Payment is conditioned on Employee's compliance with the terms of this Agreement and other existing obligations to any of the Released Parties. Employee further acknowledges that any portion of the Settlement Payment is sufficient consideration for the promises herein, and Employee would not be entitled to any portion of the Settlement Payment if Employee did not sign this Agreement.

4.  **Proceedings and Covenant Not to Sue.** Employee's release of liability in this Agreement is a material provision of this Agreement. Thus, Employee agrees to dismiss with prejudice the Lawsuit, without costs, and waive all rights of appeal. Further, Employee agrees to take all steps reasonably necessary to facilitate the dismissal with prejudice of the Lawsuit within ten (10) business days of receipt of the Settlement Payment if such dismissal is not already accomplished. Employee also agrees that should any additional legal action be pursued on Employee's behalf by any person or other entity against any of the Released Parties regarding the claims released in this Agreement, Employee will not accept recovery from such action, but will assign such recovery to the Company. Employee represents that, as of the Effective Date, Employee has not filed any other charge of discrimination, lawsuit or initiated any other proceeding against any of the Released Parties. Nothing in this Agreement shall be construed to affect the rights and responsibilities of the Equal Employment Opportunity Commission (the "Commission"), the National Labor Relations Board (the "NLRB"), or any other federal, state or local agency with similar responsibilities to enforce any laws pertaining to employment discrimination or retaliation, or union activity or participation. Likewise, this waiver will not be used to justify interfering with the protected right of any employee to file a charge or participate in an investigation or proceeding conducted by the Commission, the NLRB or any similar agency; however, Employee waives the right to any recovery from such proceeding.

5.  **Tax Consequences.** Employee acknowledges that none of the Released Parties have made any representations to Employee regarding the tax consequences of this Agreement. Employee agrees to pay federal, state, and local taxes, if any, which are required by law to be paid with respect to this Agreement except to the extent they are paid directly by the one of the Released Parties.

6.  **Confidentiality.** Employee agrees to maintain the confidentiality of the terms of this Agreement, and the negotiations leading thereto, and shall not further discuss the Agreement (or the negations leading thereto) except to governmental officials; as required by law; to tax advisors; to Employee's attorneys; and to Employee's spouse. Employee shall instruct Employee's spouse, attorneys and tax advisors as to the terms of this paragraph and shall insist upon their compliance with the same. Employee agrees that strict compliance with this paragraph is material and essential to the consideration paid. This Agreement to be approved by the court will be submitted under seal in the Lawsuit.

7.  **Property and Confidential Information.** Employee agrees that, by the Effective Date, Employee will return to the Company any and all Confidential Information, as defined
4 of 8

Employee MB     the Company 

below, and any property belonging to any of the Released Parties (including, without limitation, laptops, cell phones, PDAs, key cards, digital media storage devices, etc.). Employee represents that Employee has not retained any Confidential Information whatsoever.

The term "Confidential Information" shall mean all trade secrets, confidential and/or proprietary information and materials, in whatever form, whether tangible or intangible, written or electronic, of any of the Released Parties, or obtained from any person or entity to which any of the Released Parties owes a duty of confidentiality, whether or not labeled or identified as proprietary or confidential, including all copies, extracts and derivatives thereof, except to the extent that Employee can prove that such information or materials (i) are or become generally known to the public through lawful means and through no act or omission of Employee, (ii) were part of Employee's general knowledge prior to employment by the Company, (iii) are disclosed to Employee without restriction by a third party who rightfully possesses the information and is under no duty of confidentiality with respect thereto, or (iv) are disclosed in a manner that would entitle Employee to whistleblower immunity under the Defend Trade Secrets Act of 2016.

8. **No Future Employment with Company.** Employee acknowledges and agrees that by signing this Agreement, Employee is voluntarily giving up any right Employee might have, if any, to employment with the Company. Employee further agrees not to apply or seek employment with the Company at any time.

9. **Section 409A.** This Agreement is intended to comply with Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A"), or an exemption thereunder and shall be construed and administered in accordance with Section 409A. Notwithstanding any other provision of this Agreement, payments provided under this Agreement may only be made upon an event and in a manner that complies with Section 409A or an applicable exemption. Any payments under this Agreement that may be excluded from Section 409A either as separation pay due to an involuntary separation from service or as a short-term deferral shall be excluded from Section 409A to the maximum extent possible. For purposes of Section 409A, each installment payment provided under this Agreement shall be treated as a separate payment. Any payments to be made under this Agreement upon a termination of employment shall only be made upon a "separation from service" under Section 409A. Notwithstanding the foregoing, the Company makes no representations that the payments and benefits provided under this Agreement comply with Section 409A and in no event shall the Company be liable for all or any portion of any taxes, penalties, interest or other expenses that may be incurred by Employee on account of non-compliance with Section 409A.

10. **Miscellaneous.**

    A. <u>Non-Admission.</u> This Agreement, offer of this Agreement, and compliance with this Agreement shall not constitute an admission by any of the Released Parties of any wrongdoing of any kind, nor shall this Agreement be admissible in any judicial, administrative, or other proceeding as an admission of liability by any of the Released Parties.

Employee _WB_   the Company _ang_

B. <u>Successors/Assigns.</u> This Agreement shall be binding upon and the benefits shall inure to the Released Parties and their respective successors and assigns.

C. <u>Modification/Waiver.</u> This Agreement cannot be modified or terminated orally, but may be changed only through written addendum executed by all Parties. No waiver of any of the terms of this Agreement shall be valid unless in writing and signed by each Party. The waiver by any Party of any provision of this Agreement shall not be construed as a waiver of any subsequent breach, nor shall any waiver be construed as a rescission of this Agreement.

D. <u>Severability.</u> The Parties agree that should any part of this Agreement, or the reaffirmations made by this Agreement, be determined by a court of competent jurisdiction to be unenforceable, the Parties intend that the enforceability of the remaining parts shall not be affected, and said unenforceable part shall be deemed not to be a part of this Agreement.

E. <u>Choice of Law and Venue.</u> The Parties agree that the terms of this Agreement shall be governed and construed in accordance with the laws of the United States of America and the State of Arkansas. All acts contemplated by this Agreement shall be performed in Little Rock, Arkansas. Pursuant to this Agreement, venue is mandatory in the state and federal courts in Little Rock, Arkansas and the Parties hereby consent to jurisdiction in Little Rock, Arkansas.

F. <u>Counterparts.</u> This Agreement may be executed in counterparts, each of which will be deemed original, but all of which together will constitute one and the same instrument. Each party agrees that an electronic signature hereto will have the same force and effect as a manual signature. A copy of this Agreement, or a signature hereto, shall have the same force and effect as an original.

G. <u>Entire Agreement.</u> Employee agrees that in executing this Agreement, Employee does not rely on any document, representation or statement, whether written or oral, other than those specifically set forth or referenced in this written Agreement. The Parties agree that this Agreement constitutes the entire agreement between Employee and the Released Parties and supersedes any prior agreements, written or oral, between the Parties, and contains all agreements between the Parties with respect any manner whatsoever, **EXCEPT nothing in this Agreement shall affect the validity of any non-disclosure, non-solicitation, non-competition, intellectual property or confidentiality agreement(s) between any of the Released Parties and Employee, or common law obligations regarding the same, which shall remain in full force and effect**. No oral understandings or promises contrary to the terms of this Agreement exist. No prior writing

Employee MWB the Company 

between the Parties will be used to alter or construe the terms of this Agreement, except as set forth in this paragraph. Employee acknowledges that Employee may hereafter discover facts different from or in addition to those now known or believed to be true, and Employee agrees that the respective releases and agreements contained herein shall be effective in all respects notwithstanding such different or additional facts.

11. **Court Approval Required.** This Agreement is contingent upon obtaining review and approval of the Agreement by the Court in the Lawsuit, and Employee agrees to cooperate fully in the preparation and presentation of a joint motion to dismiss. If the Court requires the Parties to submit the Agreement for review, the Parties agree to seek leave to submit the Agreement under seal so as to preserve the confidentiality of this Agreement.

12. **Full Understanding of Agreement.** By signing below, Employee understands and agrees that Employee:

> A. HAS HAD A PERIOD OF AT LEAST TWENTY-ONE (21) DAYS TO CONSIDER THIS AGREEMENT BEFORE EXECUTING IT. IT IS AGREED BY THE PARTIES THAT THIS AGREEMENT IS PROVIDED TO EMPLOYEE ON MAY 9, 2019. EMPLOYEE MAY WAIVE THIS TWENTY-ONE (21) DAY NOTICE BY EXECUTING THIS AGREEMENT PRIOR TO THE END OF TWENTY-ONE (21) DAYS; HOWEVER, THERE IS NO PENALTY FOR EMPLOYEE TAKING THE FULL TWENTY-ONE (21) DAYS TO CONSIDER THIS AGREEMENT AND SHOULD EMPLOYEE CHOOSE TO WAIVE THIS NOTICE, EMPLOYEE DOES SO KNOWINGLY AND VOLUNTARILY;
>
> B. HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT;
>
> C. **HAS AT ALL TIMES DURING THE COURSE OF THE NEGOTIATION AND EXECUTION OF THIS AGREEMENT HAD THE OPPORTUNITY TO DISCUSS THOROUGHLY THIS AGREEMENT WITH ANY ATTORNEY EMPLOYEE DESIRED CONCERNING THE TERMS OF THIS AGREEMENT, AND THAT EMPLOYEE IS HEREBY ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY OF EMPLOYEE'S CHOICE PRIOR TO ENTERING INTO THIS AGREEMENT;**
>
> D. KNOWINGLY AND VOLUNTARILY AGREES TO ALL OF THE TERMS SET FORTH IN THIS AGREEMENT;
>
> E. KNOWINGLY AND VOLUNTARILY INTENDS TO BE LEGALLY BOUND BY THE SAME;

Employee MWB          the Company 

F.  KNOWINGLY AND VOLUNTARILY IS GIVING UP ANY RIGHT TO SUE ANY OF THE RELEASED PARTIES; AND

G.  MAY REVOKE THIS AGREEMENT PRIOR TO THE EXPIRATION OF SEVEN (7) DAYS AFTER THE DATE EMPLOYEE SIGNS IT BY PROVIDING WRITTEN NOTICE OF THE REVOCATION TO LAUREN MUTTI, VICE PRESIDENT – LABOR & EMPLOYMENT COUNSEL. WRITTEN NOTICE OF REVOCATION MUST BE SENT TO: LAUREN MUTTI, VICE PRESIDENT – LABOR & EMPLOYMENT COUNSEL, SOUTHERN GLAZER'S WINE AND SPIRITS, LLC, LAUREN.MUTTI@SGWS.COM, 14911 QUORUM DR., SUITE 150, DALLAS, TX 75254. IF EMPLOYEE REVOKES THIS AGREEMENT, EMPLOYEE SHALL NOT BE ENTITLED TO RECEIVE ANY PAYMENT UNDER IT. **ANY PAYMENT OBLIGATION OF THE COMPANY SHALL NOT COMMENCE UNTIL THE EFFECTIVE DATE AND COURT APPROVAL OF THE AGREEMENT.**

IN WITNESS WHEREOF, the Parties have executed this Agreement and make it effective as set forth above.

_____
**Michael L. Burns – Employee**

Date signed: 5-22-19

_____
**The Sanford Law Firm, PLLC – Attorney for Michael L. Burns**
By:

Date signed: 5/22/19

_____
**Southern Glazer's Wine and Spirits of Arkansas, LLC**
By:  Alan N. Greenspan
     Executive Vice President and General Counsel

Date signed: 5/29/2019 | 10:34 AM PDT

Employee _____   the Company _____